IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**

**JOSE CALVO-SAUCEDO,**

    **Defendant.**                                    **Case No. 09-cr-30181-DRH**

## MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

### I. Introduction

Before the Court is Defendant's Motion to Quash Arrest and Suppress Evidence (Doc. 22), to which the Government has responded in opposition (Doc. 29). On March 10, 2010, the Court conducted a hearing on the Motion (*see* Minutes, Doc. 34), at which time the Court took the matter under advisement. Having considered the arguments and evidence offered by the Parties, the Court is now ready to issue a ruling upon the merits. For the reasons discussed herein, Defendant's arrest as related to this case shall not be quashed nor the evidence suppressed

.

## II.  Background

The factual details within the Parties' briefs and the additional witness testimony during the hearing comprise the background facts pertinent to Defendant's suppression motion.

Defendant Jose Luis Calvo-Saucedo has been charged with possession with the intent to distribute 5 kilograms or more of cocain hydrochloride, in violation of **21 U.S.C. §§ 841(a)(1)** and **841(b)(1)(A)** (Doc. 13).  This charge arose from his arrest on November 13, 2009, following a traffic stop of Defendant's car for improper lane usage.  On November 13, 2009, on-duty Officers Kevin Thebeau of the Granite City Police Department and Todd Huskey of the Troy Police Department observed Defendant driving a white Pontiac Grand Am traveling North on Interstate 55 ("I-55). The Officers' car was driving directly behind the Pontiac; they became slightly suspicious upon noticing the driver repeatedly reaching over and down towards the passenger side of the vehicle.  The Pontiac continued past the intersect with Interstate 70 ("I-70"), when it abruptly veered right and headed through the grassy median, onto the exit ramp for eastbound I-70.  Due to Defendant's improper lane usage, the Officers initiated a traffic stop.

Officer Thebeau approached the Pontiac from its passenger's side and knocked on its window.  Officer Thebeau noted that it took Defendant several attempts to find the button and roll down the window, as his hands were shaking. Officer Thebeau also testified that Defendant seemed very nervous, was taking short, rapid breaths and that he had a very unkept appearance.  Further, Officer Thebeau

noticed that Defendant's car was also unkept, with various food wrappers and other trash scattered inside. He proceeded to ask Defendant for some identification. Defendant produced an Indiana driver's license identifying him as "Jose Luis Calvo-Saucedo." When Officer Thebeau then asked Defendant what his travel plans were, he replied that he had been visiting a friend in St. Louis and was on his way home. Officer Thebeau further testified that he observed a Mexican passport sitting on the console of Defendant's vehicle, and that they key chain in the vehicle's ignition only had one key on it.

Officer Thebeau also testified that when Defendant rolled down the window of the passenger-side door, he noticed distinct chemical odor coming from inside of Defendant's vehicle, which smelled similar to a silicone material. However, Officer Thebeau stated that he could not identify any legitimate use of any silicone or other caulking material on Defendant's vehicle. Officer Thebeau then told Defendant he would have to issue him a written warning for improper lane usage. While he was writing up the traffic warning in his police car, Officer Thebeau testified that Defendant was again acting suspicious because he kept turning around to look at the Officers and fidgeting in his seat.

Officer Thebeau returned to Defendant's car and gave him the written traffic warning, telling Defendant he was free to go. However, Officer Thebeau then asked Defendant if he would come back to their police car to talk to them. Defendant agreed and exited his vehicle and stood outside to talk to the Officers. Officer Thebeau asked Defendant if he had any illegal narcotics in his car, to which

he stated he did not. Officer Thebeau next asked Defendant if he could search the vehicle. Again, Defendant agreed. Because it appeared that Defendant did not speak much English, Officer Thebeau asked him if he knew what he meant by the term "search," and Defendant replied that he did. While Officer Thebeau proceeded to search Defendant's vehicle, Defendant stood outside and to the rear of the vehicle, talking with Officer Huskey.

During the search, Officer Thebeau attempted to find the source of the silicone smell that was emanating from inside the vehicle. He proceeded to remove a rubber strip from the front door rocker panel on the passenger side. To do so, Officer Thebeau used a pocket knife to first remove the pressure clips, and then lifted the cover off of the rocker panel, exposing several small holes. He then shined a flashlight into a hole and observed something inside, which resembled cloth. Officer Thebeau inserted the tip of his knife into the hole and drew out a white powdery substance. He asked Defendant if this powder was cocaine or anything else illegal and stated that Defendant said it was not. Believing a further search of the vehicle would become more intrusive,[1] Officer Thebeau then asked Defendant if he would sign a written search consent. He asked Defendant to read and sign both the English and Spanish version of the written consent to search form. The white powdery substance subsequently tested positive for cocaine. The Officers placed Defendant under arrest for cocaine trafficking. As a result of a more thorough search

---

[1] Officer Thebeau testified that he wanted to pull down the ground effects moulding and this may not have been easily repaired after the vehicular search was conducted.

of Defendant's vehicle, ten kilo-sized bundles of cocaine were recovered.

### III. Discussion

Defendant argues that the search of his vehicle – in particular, the dismantling of the passenger side, front door rocker panel – violated his Fourth Amendment rights because it exceeded the scope of his consent. In response, the Government counters that the search of Defendant's vehicle was within the scope of his consent and further, that probable cause supported the initial search of the rocker panel area. It is undisputed that Defendant gave his verbal consent for the Officers to search his vehicle and that he did not verbally limit this consent nor did he ever object to any portion of the search while it was being conducted. However, Defendant offers that the standard for measuring the scope of one's verbal consent under the Fourth Amendment is one of objective reasonableness and therefore would not include any means of searching considered to be inherently invasive or destructive to the vehicle. ***See Florida v. Jimeno*, 500 U.S. 248, 250-51 (1991); *see also United States v. Torres*, 32 F.3d 225 (7th Cir. 1994); *United States v. Garcia*, 897 F.2d 1413 (7th Cir. 1990)**. Along these lines, Defendant asserts that Officer Thebeau's search of the vehicle's rocker panel was "inherently invasive and not normally included in the set of areas to be searched" (Doc. 23, p. 3). As such, Defendant believes the search exceeded his consent in that the typical person would not have anticipated the Officer's search to include the dismantling of the rocker panel. Defendant compares the facts of this case to ***Garcia***, where the

Seventh Circuit held that a suspect's verbal consent to search the vehicle would not include the opening of door panels, finding this to be inherently invasive and exceeding the scope of consent. **897 F.2d at 1419-20**. Moreover, Defendant argues that his subsequently-obtained written consent to a more intrusive search will not serve as a cure-all to the Fourth Amendment violation, which had already occurred when Officer Thebeau first searched the rocker panel area. Due to this alleged Fourth Amendment violation, Defendant requests that his arrest be quashed and the evidence seized from the vehicle as a result of the illegal search be suppressed.

The Parties also do not dispute that the traffic stop which subsequently lead to the contested search was proper. In addition, it remains undisputed that Defendant's verbal (and written) consent to search his vehicle was "freely and voluntarily given."[2] ***See Garcia*, 897 F.2d at 1419 (free and voluntary consent to search is one of the exceptions to the constitutional requirements of both a warrant and probable cause)**. Lastly, it is undisputed that the Officers did not obtain a search warrant before searching Defendant's vehicle. Therefore, the Court must determine whether the search violated Defendant's Fourth Amendment rights.

The Fourth Amendment protects individuals from "unreasonable searches and seizures" conducted by the government when unsupported by probable cause. **U.S. CONST. amend. IV.** "When evidence is obtained in violation of the

---

[2] Defendant does not raise the issue regarding whether his consent was freely given due to his limited abilities with the English language, and thus, the Court will not deem it to be a contested issue.

Fourth Amendment, the exclusionary rule precludes the use of such evidence and its fruits in criminal proceedings against the victim of the violation." ***United States v. Merritt*, 361 F.3d 1005, 1009 (7th Cir. 2004)**. One of the exceptions to the probable cause requirement is when consent to search is given by the owner of the object or premises to be searched, in this case, Defendant's vehicle. ***Garcia*, 897 F.2d at 1419**. However, as ***Garcia*** explained, "the scope of a consent search is limited by the breadth of the actual consent." ***Id.* (citation omitted)**. In other words, the scope of the consent search must be objectively reasonable in scope. ***Jimeno*, 500 U.S. at 251**.

***Garcia***, a case relied upon by Defendant in his argument, found that the dismantling of the driver's side car door panel was "inherently invasive," and therefore beyond the scope of consent. As previously stated herein, Defendant likens the facts of his case to ***Garcia***, in his attempt to urge the Court to find that Officer Thebeau's search of the passenger side front door rocker well panel well area was invasive and therefore beyond the scope of Defendant's consent. While, in ***Garcia***, the Seventh Circuit found that the scope of consent was exceeded, it nevertheless held that the search did not violate the defendant's Fourth Amendment rights and was therefore legal, finding that the dismantling of the doors was justified by probable cause.

The Supreme Court, in ***Ross***, ruled that warrantless searches of vehicles would not be considered in violation of the Fourth Amendment if supported by

probable cause. ***Ross*, 456 U.S. at 808-09**. However, as ***Ross*** explained, probable cause must be more than just an officer's "subjective good faith" belief, but must instead "be based on objective facts that could justify the issuance of a warrant by a magistrate." ***Id.* at 808**. Therefore, if proper probable cause exists, it will "justif[y] the search of every part of the vehicle and its contents that may conceal the object of the search." ***Id.* at 825**. To demonstrate the existence of probable cause to justify a warrantless search, the officers must show that "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense," or that contraband or evidence was located in a particular place. ***McCray v. Illinois*, 386 U.S. 300, 304 (1967) (citation omitted);** *see also **Carroll v. U*.**S., 267 U.S. 132, 149 (1925) (a warrantless search of a vehicle supported by probable cause requires "a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction.")**. As the term itself implies, "probable cause" deals not with certainties but probabilities. ***Illinois v. Gates*, 462 U.S. 213, 231-32 (1983) ("[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules.")**. To determine whether probable cause existed to support a warrantless search, the Court must use a "totality of the circumstances" approach. ***Id.* at 238**.

Here, the Court similarly finds that the search of Defendant's vehicle was supported by probable cause, which existed before Officer Thebeau began his search, thereby obviating this need to obtain a search warrant and mooting the issue regarding the scope of Defendant's consent. Probable cause to search Defendant's vehicle was based on Officer Thebeau's extensive training, prior experience and personal observations of Defendant's alleged erratic behavior right before the traffic stop. During the suppression hearing, Officer Thebeau testified that he is a Police Officer with the Granite City Police Department, currently assigned as a task officer for interstate drug interdiction with the Drug Enforcement Administration ("DEA"). During his law enforcement career, he stated that he has conducted hundreds of traffic stops from which he has recovered all types of illegal narcotics. Officer Thebeau further testified that he has previously found these narcotics in various locations within a vehicle, such as in luggage, under seats, glove compartments, center consoles, trunks and other general areas.

However, due to recent training he received last summer with the DEA and Immigration and Customs Enforcement ("ICE") authorities, Officer Thebeau also knows that narcotics can be placed into secret vehicle compartments for transport. To elaborate, he explained that illegal narcotics can be hidden in natural or constructed void compartments in vehicles, such as the void area where an airbag is usually housed, underneath the center console, the exhaust tunnel, behind false seats, underneath false compartments in the floor, the vehicle firewall, a raised floor in the trunk, within the spare tire, the drive shaft or even the rocker panels. Further,

Officer Thebeau learned that various materials such as silicone, caulk or bond-o are often used to help seal these hidden compartments.

While on duty with Officer Huskey on November 13, 2009, Officer Thebeau observed Defendant driving his vehicle on northbound I-55. He noted that Defendant was alone in his car and kept reaching to the right, towards the passenger side of the vehicle, which Officer Thebeau thought seemed odd. Based on his knowledge and extensive law enforcement experience, Officer Thebeau became suspicious. His suspicion grew when, shortly thereafter, Officer Thebeau saw Defendant's car veer sharply to the right, cross the median and take the I-70 exit (eastbound). Due to his increasing suspicion and Defendant's improper lane usage, Officers Thebeau and Husky initiated a traffic stop.[3]

When Officer Thebeau approached Defendant's vehicle, he testified that it took several attempts for Defendant to roll down the window because his hands were shaking. Officer Thebeau stated that Defendant continued to act nervous throughout the traffic stop and had a disheveled appearance.[4] The inside of Defendant's vehicle was also strewn with trash and food wrappers, which indicated to Officer Thebeau that Defendant had possibly been in his car for a good amount of time. Officer Thebeau observed a Mexican passport inside the vehicle, however, Defendant had an Indiana driver's license, claimed he had been visiting a friend in

---

[3] Again, the Parties do not dispute the validity of the traffic stop due to Defendant's improper lane usage.

[4] Officer Thebeau also testified that when he went back to his vehicle to issue Defendant the written traffic warning, Defendant kept turning around in his seat to look at the Officers.

St. Louis and was driving back to his home in Indiana. Officer Thebeau testified that he wondered why Defendant would need his Mexican passport if he lived in Indiana and was only traveling to St. Louis. Further, he noticed there was only a single key on the key chain in the vehicle's ignition. Officer Thebeau's prior training had taught him that the single key was sometimes a sign of a vehicle that had either been dropped off or that was going to be dropped off for someone else to transport.

All of these things were indicative of the possibility that Defendant was transporting narcotics or some other contraband in his vehicle. Yet, perhaps the most compelling indicator supporting Officer Thebeau's belief that Defendant was making a "drug run" was the distinct chemical smell coming from inside Defendant's car, noticeable once the window was rolled down. Officer Thebeau testified that the chemical smell was similar to silicone. Because he could not see anything readily noticeable on the vehicle that appeared as though it had been repaired or fixed, Officer Thebeau deduced that this silicone-like smell was being used to either seal a hidden compartment or mask the narcotics odor from the drug-sniffing dogs used by law enforcement.

Officer Thebeau certainly had the prior experience and narcotics training to be able to make a reasonable assessment as to when certain circumstances likely indicated that a person was engaged in the transport of illegal narcotics. The Court finds that Officer Thebeau's observations of Defendant's behavior during the traffic stop, as well as his observations of the appearance of Defendant himself, the vehicle, items within the vehicle, and the noticeable pervasive

silicone smell, coupled with the Officer's law enforcement experience and related DEA training, were sufficient to warrant a prudent man in believing that Defendant was transporting illegal narcotics or other contraband. Therefore, the requisite probable cause standard, as set forth by the Supreme Court in ***Carroll***, ***Ross*** and ***McCray***, has been met, allowing the search of Defendant's vehicle *without* need of a search warrant or his verbal consent. Accordingly, there was no violation of Defendant's Fourth Amendment rights.

In the alternative, should it be subsequently determined that probable cause did not exist to support the search of Defendant's vehicle (including the rocker panel), the Court finds that Defendant's verbal consent was broad enough in scope to allow for the removal of the rocker panel. Rather than being inherently invasive or otherwise destructive, evidence at the hearing demonstrated that searching the rocker well panel of a vehicle is a routine part of a law enforcement officer's search of the inside of a vehicle, when transport of illegal narcotics is suspected. Although Defendant argues that Officer Thebeau's removal of the rocker panel strip damaged his vehicle, he was unable to prove this either in his briefings or during the suppression hearing. Officer Thebeau was unable to identify the pictures that purportedly showed damage to Defendant's vehicle and Defendant chose not to testify.

Even, *assuming arguendo*, if Officer Thebeau had damaged Defendant's vehicle in some way when he searched inside the rocker panel well area, it would have been an isolated and rare incident, as Officer Thebeau testified credibly that he

had conducted hundreds of vehicle searches without causing damage to the vehicle. As the evidence showed during the hearing, the rocker panel strip basically "pops" off and back on with little effort, by removing the clips that secure the strip to the vehicle. Officer Thebeau was able to pop off the clips with the tip of his pocket knife. Again, his prior training with the DEA had taught him that the rocker panel is a common area used to conceal narcotics. The effort necessary to remove the rocker well panel strip appears to be no more than what is needed to open and close a glove box.

Before he removed the passenger side rocker panel, he noted that the silicone smell was still apparent in that general area (which is on the right side of the passenger seat, on the floor of the vehicle, between the seat and the door). In most vehicles, the inside of the rocker panel is usually hollow, however, once the rocker panel strip was removed on Defendant's vehicle, Officer Thebeau noticed something was inside the space. He then stuck the tip of his pocket knife into one of the rocker panel clip holes and pulled out a white powdery substance. This later was identified to be cocaine.

Thus, the Court finds that Officer Thebeau's search of Defendant's vehicle, including the rocker panel, was not invasive or otherwise destructive. Therefore, it is not akin to the facts in **Garcia** with regard to the scope of consent issue. Once Officer Thebeau was able to detect something inside of the rocker panel well area, he then had probable cause to search further. Because he knew *this* type of searching could become more destructive to the vehicle, he then obtained

Defendant's written consent (both in English and Spanish) to conduct a more thorough search, whereby the ten kilo-sized bundles of cocaine were found.

Another note of import was the fact, introduced as evidence during the suppression hearing, that during Officer Thebeau's search, Defendant was standing in a spot which enabled him to view Officer Thebeau searching the area near the passenger side door of the vehicle. Had Defendant feared that Officer Thebeau would soon do something to uncover the cocaine in the rocker panel well area, Defendant could have told the Officers that he wanted to limit their search area or stop it altogether. However, Defendant never said anything that expressed withdrawal of his consent.

## IV. Conclusion

For the reasons discussed herein, the Court hereby **DENIES** Defendant's Motion to Quash Arrest and Suppress Evidence (Doc. 22), finding that the warrantless search of the vehicle did not violate Defendant's Fourth Amendment rights, as probable cause existed from the time of the traffic stop to support the search. However, in the alternative, if probable cause was determined not to have existed to support the warrantless search, the Court also finds that the search of Defendant's vehicle, including the rocker panel, was not inherently invasive or otherwise destructive to exceed the scope of Defendant's verbal consent to search. Accordingly, this case shall proceed to trial as previously scheduled, for May 3, 2010.

**IT IS SO ORDERED.**

Signed this 9th day of April, 2010

/s/  David R Herndon
**Chief Judge**
**United States District Court**